1  CHARLES F. PREUSS (State Bar No. 45783)
   BRENDA N. BUONAIUTO (State Bar No. 173919)
2  DRINKER BIDDLE & REATH LLP
   50 Fremont Street, 20th Floor
3  San Francisco, California 94105
   Telephone: (415) 591-7500
4  Facsimile: (415) 591-7510
   charles.preuss@dbr.com
5  brenda.buonaiuto@dbr.com

6  Attorneys for Defendants
   ORTHO-MCNEIL PHARMACEUTICAL, INC., now
7  known as ORTHO-McNEIL-JANSSEN
   PHARMACEUTICALS, INC.,
8  and MCKESSON CORPORATION

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12  THERESA CLEMONDS, an individual;      Case No. 08
    VALERI HAMILTON, an individual;                              1167
13  CLAUDIA MATAMOROS, an individual;     DECLARATION OF BRENDA N.
    LATASHA PRENTICE, an individual;      BUONAIUTO IN SUPPORT OF
14  MARGARET RAINEY, an individual;       NOTICE OF REMOVAL AND
    FELECIA SOUTHWELL, an individual;     REMOVAL OF ACTION UNDER 28
15  HALEY VANSANDT, an individual;        U.S.C. § 1441(b) [DIVERSITY]

16                Plaintiffs,

17         v.

18  ORTHO-MCNEIL PHARMACEUTICAL,
    INC., a Delaware Corporation;
19  MCKESSON CORP. and DOES 1-500,
    inclusive,
20
                  Defendants.
21

22         I, Brenda N. Buonaiuto, declare:

23         1.    I am an attorney admitted to practice before all courts of the State of

24  California and am a partner in the law firm of Drinker Biddle & Reath, LLP, attorneys for

25  defendants Ortho-McNeil Pharmaceutical, Inc. ("OMP"), now known as Ortho-McNeil-

26  Janssen Pharmaceuticals, Inc. ("OMJPI"), and McKesson Corporation ("McKesson") in

27  this action. I make this Declaration based on my personal knowledge, in support of the

28  removal by OMP, now known as OMPJI, of *Theresa Clemonds, et al. v. Ortho-McNeil*

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

396009v1      | DECLARATION IN SUPPORT OF NOTICE OF REMOVAL AND REMOVAL      CASE NO.

*Pharmaceutical, Inc., McKesson Corp., and Does 1-500, inclusive*, Case Number CGC-07-469001 to this Court. I would and could competently testify to the matters stated in this Declaration if called as a witness.

2. A true and accurate copy of the Complaint (the "Complaint") in this action is attached as **Exhibit A**. The Complaint is the only state court pleading known to OMP, now known as OMPJI, and to McKesson to have been filed in this action.

3. OMP was a corporation existing under the laws of the State of Delaware, with its principal place of business in New Jersey, and is now known as OMPJI, which is a Pennsylvania corporation, with its principal place of business also in New Jersey. OMP, now known as OMPJI, was served with the Summons and First Amended Complaint in this action on February 14, 2008.

4. McKesson was served with the Summons and Complaint in this action on February 19, 2008. McKesson consents to removal of this action to this Court.

5. OMP, now known as OMPJI, will file a notice of the filing of this Notice of Removal and Removal in the San Francisco County Superior Court and will serve plaintiffs' counsel with a copy.

6. On March 1, 2006, the Judicial Panel on Multidistrict Litigation ("JPML") created MDL 1742, *In re: Ortho Evra Products Liability Litigation*, ruling that all federal actions involving allegations of injury or death from use of the prescription drug Ortho Evra® be centralized for pre-trial purposes in the United States District Court for the Northern District of Ohio, before the Honorable David A. Katz, Case Number 1:06-CV-40000-DAK. To date, over 900 cases have been transferred to MDL 1742, and transfers of additional "tag-along" actions are pending.

7. Attached as **Exhibit B** is a true and accurate copy of the Declaration of Greg Yonko, Senior Vice President – Purchasing, McKesson Corporation, filed in *Abel, Theresa, et al. v. Ortho-McNeil Pharmaceutical, Inc., et al.*, United States District Court, Northern District of California, Case No. C 06 7551 SBA, on December 8, 2006.

8. Attached as **Exhibit C** is a true and accurate copy of the Slip Opinion

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

2

DECLARATION IN SUPPORT OF NOTICE OF REMOVAL AND REMOVAL                CASE NO.

1  denying the plaintiffs' motion to remand in *In re Phenylpropanolamine ("PPA")*

2  *Products Liability Litigation*, MDL No. 1407, Docket No. C02-423R, in the United

3  States District Court for the Western District of Washington (Seattle), dated November

4  27, 2002.

5          9.      Attached as **Exhibit D** is a true and accurate copy of the Slip Opinion

6  denying the plaintiffs' motion to remand in *Barlow, et al. v. Warner-Lambert Co., et al.*,

7  Case No. CV 03-1647-R(RZx), in the United States District Court for the Central District

8  of California (Western Division), dated April 28, 2003.

9          10.     Attached as **Exhibit E** is a true and accurate copy of the Slip Opinion

10  denying the plaintiffs' motion to remand in *Skinner, et al. v. Warner-Lambert Co., et al.*,

11  Case No. CV 03-1643-R(RZx), in the United States District Court for the Central District

12  of California (Western Division), dated April 28, 2003.

13          11.     I have reviewed reports of verdicts and settlements in cases in this judicial

14  district, brought by plaintiffs claiming serious injuries from the use of prescription drugs

15  or medical devices.  Given the similarity between the injuries alleged in those cases and

16  plaintiffs' claims, it is reasonably believed that if plaintiffs succeeded in proving their

17  allegations in this action, they would each recover in excess of $75,000, exclusive of

18  interest and costs.  Plaintiffs claiming substantially similar injuries in the Ortho Evra®

19  MDL have specifically alleged that the amount in controversy in their respective actions

20  exceeds $75,000, exclusive of interest and costs.

21          I declare under penalty of perjury under the laws of the United States of America that

22  the foregoing is true and correct.  Executed on February 26, 2008.

23

24                                                          Brenda N. Buonaiuto

25

26

27

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

3

DECLARATION IN SUPPORT OF NOTICE OF REMOVAL AND REMOVAL          CASE NO.

1  SHAWN KHORRAMI, ESQ., SBN 180411
   DYLAN POLLARD, ESQ., SBN 180306
2  SONIA TANDON, ESQ., SBN 239614
   KHORRAMI, POLLARD & ABIR, LLP
3  444 S. Flower Street
   Thirty-Third Floor
4  Los Angeles, CA 90071
   Telephone: (213) 596-6000
5  Facsimile: (213) 596-6010
   email: skhorrami@kpalawyers.com
6
   BRIAN KABATECK, ESQ., SBN 152054
7  RICHARD KELLNER, ESQ., SBN 171416
   KABATECK BROWN KELLNER LLP
8  644 South Figueroa Street
   Los Angeles, CA 90071
9  Telephone: (213) 217-5000
   Facsimile: (213) 217-5010
10 email: bsk@kbklawyers.com

11 MICHAEL S. BURG, ESQ.
   SETH A. KATZ, ESQ.
12 JANET G. ABARAY, ESQ.
   BURG SIMPSON ELDREDGE HERSH JARDINE PC
13 40 Inverness Drive East
   Denver, CO 80112
14 Telephone: (303) 792-5595
   Facsimile: (303) 708-0527
15
   Attorneys for Plaintiffs
16

17
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
18                          COUNTY OF SAN FRANCISCO

19
   THERESA CLEMONDS, an individual;      )  Case No: C G C - 0 7 - 4 6 9 0 0 1
20 VALERI HAMILTON, an individual;       )
   CLAUDIA MATAMOROS, an individual;     )
21 LATASHA PRENTICE, an individual;      )  COMPLAINT FOR DAMAGES BASED
   MARGARET RAINEY, an individual;       )  ON:
22 FELECIA SOUTHWELL, an individual;     )
   HALEY VANSANDT, an individual,        )  1.  NEGLIGENCE
23                                       )  2.  STRICT PRODUCT LIABILITY -
              Plaintiffs                 )      FAILURE TO WARN
24                                       )  3.  BREACH OF EXPRESS
              v.                         )      WARRANTY
25                                       )  4.  BREACH OF IMPLIED
   ORTHO-MCNEIL PHARMACEUTICAL,          )      WARRANTY
26 INC., a Delaware Corporation; MCKESSON)  5.  NEGLIGENT
   CORP and DOES 1-500, inclusive,       )      MISREPRESENTATION
27                                       )  6.  FRAUD
              Defendants                 )
28                                       )      DEMAND FOR JURY TRIAL

                                      1

   COMPLAINT FOR DAMAGES

ENDORSED
F I L E D
San Francisco County Superior Court

NOV - 8 2007

GORDON PARK-LI, Clerk
BY: _____PARAM NATT_____
                    Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

APR 1 1 2008 -9:00 AM

DEPARTMENT 212

1  Plaintiffs allege as follows:

2  **INTRODUCTION**

3  1.      Plaintiffs are all individuals who have consumed Defendant ORTHO-MCNEIL
4  PHARMACEUTICAL INC.'s drug Ortho Evra® (hereinafter referred to as "Ortho Evra". Each
5  of the Plaintiffs herein have suffered and/or may continue to suffer potentially fatal side effects
6  such as strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks.

7  2.      Defendant ORTHO-MCNEIL PHARMACEUTICAL INC (hereinafter "ORTHO-
8  MCNEIL") designed, researched, manufactured, advertised, promoted, marketed sold and/or
9  distributed Ortho Evra. Furthermore, Defendant ORTHO-MCNEIL concealed its knowledge of
10  Ortho Evra's risks and trivialized the serious side effects of Ortho Evra from Plaintiffs,
11  Plaintiff's physicians, pharmacists and the public in general.

12  3.      Defendant MCKESSON CORP ("hereinafter "MCKESSON") is a corporation
13  whose principle place of business is San Francisco, California. MCKESSON distributed and sold
14  Ortho Evra in and throughout the State of California.

15  4.      Ortho Evra is an adhesive transdermal birth control patch that delivers continuous
16  levels of the hormones progestin and estrogen through the skin and into the blood stream to
17  prevent pregnancy. Ortho Evra was approved by the FDA in November 2001 and since has been
18  used by over 4 million women. On November 10, 2005 the FDA issued a warning about the
19  increased risks of blood clots associated with the use of Ortho Evra. Specifically, users of Ortho
20  Evra are exposed to 60% more total estrogen in their blood than users of the typical birth control
21  pill which contains 35 micrograms of estrogen.

22

23  **JURISDICTION AND VENUE**

24  5.      The California Superior Court has jurisdiction over this action pursuant to
25  California Constitution Article VI, Section 10, which grants the Superior Court "original
26  jurisdiction in all causes except those given by statute to other trial courts." The Statutes under
27  which this action is brought do not specify any other basis for jurisdiction.

28  6.      The California Superior Court has jurisdiction over the Defendants because,

2

COMPLAINT FOR DAMAGES

1    based on information and belief, each is a corporation and/or entity and/or person organized
2    under the laws of the State of California, a foreign corporation or association authorized to do
3    business in California and registered with the California Secretary of State or has sufficient
4    minimum contacts in California, is a citizen of California, or otherwise intentionally avails itself
5    of the California market so as to render the exercise of jurisdiction over it by the California
6    courts consistent with traditional notions of fair play and substantial justice.

7        7.    Venue is proper in this Court pursuant to California Code of Civil Procedure
8    Section 395 in that Defendant MCKESSON has its principle place of business in San Francisco.

9        8.    Furthermore Defendants ORTHO-MCNEIL and MCKESSON have purposefully
10   availed themselves of the benefits and the protections of the laws within the State of California.
11   Defendant MCKESSON has its principle place of business within the state. Defendants ORTHO-
12   MCNEIL and MCKESSON have had sufficient contact such that the exercise of jurisdiction
13   would be consistent with the traditional notions of fair play and substantial justice.

14       9.    Plaintiffs each individually seek relief that is within the jurisdictional limits of the
15   court.

16                              **PARTIES**

17                             **PLAINTIFFS**

18       10.    Plaintiff THERESA CLEMONDS is a resident of Rochester, New York, who was
19   prescribed Ortho Evra and was severely injured as a result.

20       11.    Plaintiff VALERI HAMILTON is a resident of Banning, California, who was
21   prescribed Ortho Evra and was severely injured as a result.

22       12.    Plaintiff CLAUDIA MATAMOROS is a resident of Suffolk, Virginia, who was
23   prescribed Ortho Evra and was severely injured as a result.

24       13.    Plaintiff LATASHA PRENTICE is a resident of St. Louis, Missouri, who was
25   prescribed Ortho Evra and was severely injured as a result.

26       14.    Plaintiff MARGARET RAINEY is a resident of Fontana, California, who was
27   prescribed Ortho Evra and was severely injured as a result.

28       15.    Plaintiff FELECIA SOUTHWELL is a resident of Huntington, Texas, who was

3

COMPLAINT FOR DAMAGES

1  prescribed Ortho Evra and was severely injured as a result.

2      16.     Plaintiff HALEY VANSANDT is a resident of Birmingham, Alabama, who was
3  prescribed Ortho Evra and was severely injured as a result.

4                                  **DEFENDANTS**

5      17.     Defendant ORTHO-MCNEIL is, and at all times material to this action was, a
6  corporation organized, existing and doing business under and by the virtue of the laws of the
7  State of Delaware, with its principle office located at 1000 Route 202 South, P.O. Box 300,
8  Raritan, New Jersey 08869.

9      18.     Defendant ORTHO-MCNEIL is, and at all times material to this action was,
10  authorized to do business, and was engaged in business in the State of California.  ORTHO-
11  MCNEIL derives substantial revenue from goods consumed within the State of California.

12      19.     Defendant ORTHO-MCNEIL includes any and all parents, subsidiaries, affiliates,
13  divisions, franchises, partners, joint venturers and organizational units of any kind, their
14  predecessors, successors and assigns and their pr0esent officers, directors, employees, agents,
15  representatives and other persons acting on their behalf.

16      20.     Plaintiffs are informed and believe, and based thereon allege, that in committing
17  the acts alleged herein, each and every managing agent, agent, representative and/or employee of
18  the defendant was working within the course and scope of said agency, representation and/or
19  employment with the knowledge, consent, ratification, and authorization of the Defendant and its
20  directors, officers and/or managing agents.

21      21.     At all times material to this action, Defendant ORTHO-MCNEIL developed,
22  manufactured, marketed, promoted, sold and/or distributed Ortho Evra in the stream of
23  commerce and in the State of California and the rest of the country.

24      22.     Defendant MCKESSON is, and at all times material to this action was, a
25  corporation organized, existing and doing business under and by virtue of the laws of the State of
26  Delaware, with its principle place of business in San Francisco, California. MCKESSON is, and
27  at all times material to this action was, authorized to do business, and was engaged in substantial
28  commerce and business under the laws of the State of California.

4

**COMPLAINT FOR DAMAGES**

23.     Defendant MCKESSON includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers and organizational units of any kind, their predecessors, successors and assigns and their present officers, directors, employees, agents, representatives and other persons acting on their behalf.

24.     Plaintiffs are informed and believe, and based thereon allege, that in committing the acts alleged herein, each and every managing agent, agent, representative and/or employee of Defendant MCKESSON was working within the course and scope of said agency, representation and/or employment with the knowledge, consent, ratification and authorization of the defendant and its directors, officers and/or managing agents.

25.     At all times relevant to this action, Defendant MCKESSON packaged, distributed, supplied, sold, placed into the stream of commerce, labeled, described, marketed, advertised, promoted and purported to warn or to inform users regarding the risks pertaining to, and assuaged concerns about the pharmaceutical Ortho Evra.

26.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants named herein as DOES 1 through 500, and each of them, are unknown to Plaintiffs, who therefore, sues said Defendants by such fictitious names.

27.     Plaintiffs will ask leave to amend this Complaint to state said Defendants' true identities and capacities when the same has been ascertained.

28.     Plaintiffs are informed and believe and based thereupon allege that each of the Defendants designated herein as DOE took part in and participated with the Defendant in all matters referred to herein and was in some manner responsible for the injuries and losses suffered by the Plaintiffs.

29.     Plaintiffs are informed and believe and based thereupon allege that at all times herein mentioned each of the Defendants was the agent, servant and/or employee or occupied other relationships with each of the other named Defendants and at all times herein mentioned acted within the course and scope of said agency and/or employment and/or other relationship and each other Defendant has ratified, consented to, and approved the acts of his agents, employees, and representatives, and that each actively participated in, aided and abetted, or

5

1  assisted one another in the commission of the wrongdoing alleged in this Complaint.

2  ## GENERAL ALLEGATIONS APPLICABLE
   ## TO ALL CAUSES OF ACTION

3

4  30.    ORTHO-MCNEIL is the world's leading manufacturer of prescription

   contraceptives as well as the current market leader in oral and patch contraceptive products.
5
   ORTHO-MCNEIL offers a range of prescription birth control options to women, including Ortho
6
   Evra, the first transdermal contraceptive patch, ten birth control pills and two diaphragms.
7
8  31.    The pharmaceutical drug at issue in this litigation is "Ortho Evra". Ortho Evra is

   the first and only once a week birth control patch. It is worn on the skin for one week and
9
   replaced on the same day of the week for three consecutive weeks, with the fourth week free
10
   from the patch. Unlike traditional oral contraceptives, such as the birth control pill, that are
11
   ingested and metabolized by the body's digestive system, the Ortho Evra patch continuously
12
   releases estrogen and progestin *directly into* the bloodstream.
13

14 32.    ORTHO-MCNEIL filed a new drug application for Ortho Evra on or about

   December 21, 2000. In the same year, doctors at the FDA reviewing the clinical trials of the
15
   Ortho Evra patch warned that blood clots could be a problem if the patch were approved. This
16
   was after two of the women developed deep vein thrombosis (a blood clot that forms in the deep
17
   veins of leg or pelvic region) which led to pulmonary embolism (a serious and deadly condition
18
   of deep vein thrombosis where the clot breaks off into the lung and clogs an artery). One medical
19
   reviewer wrote that it would be important to study users after Ortho Evra came into the market
20
   for clot problems.
21

22 33.    Despite those concerns, Ortho Evra received FDA approval for the prevention of

   pregnancy in November of 2001. Since then, Ortho Evra has been prescribed to more than 4
23
   million women and has become one of the fastest growing birth control method in the United
24
   States.
25

26 34.    Since its approval the there have been many reports that indicate the serious risks

   associated with the consumption of Ortho Evra. In particular, the FDA has logged 9,116 reports
27
   of adverse reactions to the patch in a **17 month** period. This is significantly higher than 1,237
28

6

adverse reports generated in a **6 year** period for ORTHO-MCNEIL's oral contraceptive, Ortho Tri-Cyclen. According to the FDA, this only represents 1% - 10% of patch related medical problems so these adverse reactions are actually more prevalent.

35.     Furthermore, reports provided by the FDA indicate that the risk of developing and/or dying from a blood clot while using the Ortho Evra patch is at least three times higher than when using birth control pills.

36.     On November 10, 2005, the FDA required that the warning label for Ortho Evra be updated to included a new warning indicating that use of Ortho Evra exposes women to a higher level of estrogen than use of other birth control methods. Specifically, the new bolded warning stated that women who use Ortho Evra are exposed to about 60% more total estrogen in their blood than if they were taking a typical birth control pill containing 35 micrograms of estrogen. Increased levels of estrogen exposes women to a greater risk of serious side effects, particularly blood clots in the legs and lungs, heart attacks and strokes.

37.     Ortho Evra was, and still continues to be, aggressively marketed as an easy to use, safe, and effective alternative to oral contraceptives. Its main allure is in its convenience since Ortho Evra only needs to be applied once a week, unlike oral contraceptive that need to be taken daily to be effective.

38.     Defendant ORTHO-MCNEIL failed to appropriately warn Plaintiffs and prescribing physicians of the serious risks of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems.

39.     Despite the higher levels of estrogen that are known to be released by Ortho Evra and the blood clot warnings, the package insert states that "there is limited epidemiological data available to determine whether safety with the transdermal route of administration is different than the oral route". The package insert goes on to say that "the information contained in this package insert is principally based on studies carried out in women who used combination **oral** contraceptives...".

40.     Defendant ORTHO-MCNEIL knew, or should have known, about the above mentioned risks based upon the state of knowledge of ORTHO-MCNEIL as it existed at that

7

time. Additionally, ORTHO-MCNEIL failed to properly or adequately investigate the safety concerns of Ortho Evra.

41.    Defendant ORTHO-MCNEIL's conduct fell below the duty of care that was owed by Defendants to Plaintiffs.

42.    Defendant ORTHO-MCNEIL misrepresented the known risks associated with the use of Ortho Evra. ORTHO-MCNEIL also made claims with regards to the safe and efficacious nature of their product in the prevention of pregnancy.

43.    Defendant ORTHO-MCNEIL negligently and recklessly failed to inform the public, prescribing healthcare professionals and the FDA of the risks of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems associated with use of their product, Ortho Evra.

44.    Defendant ORTHO-MCNEIL was careless and negligent in their manufacturing, testing, selling, distributing, merchandising, advertising, promoting, packaging, and marketing of Ortho Evra.

45.    By reason of the foregoing, Plaintiffs have suffered from strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems.

## FRAUDULENT CONCEALMENT

46.    Any applicable statute of limitations have been tolled by the knowing and active concealment and denial of facts as alleged herein by the Defendants. Plaintiffs have been kept in ignorance of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs could not have reasonably discovered the dangerous nature and unreasonable adverse side effects associated with Ortho Evra. As a result, Plaintiffs did not discover the facts giving rise to these claims until less than one year before the filing of this Complaint.

47.    Defendants are and were under a continuing duty to disclose the true character, quality and nature of the patch to Plaintiffs. Because of their concealment of the true character, quality and nature of the contraceptive, Defendants are estopped from relying on any statute of

8

limitations defense.

**FIRST CAUSE OF ACTION**
*Negligence*
(Against Defendants ORTHO-MCNEIL and MCKESSON)

48.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth in this paragraph.

49.    Defendants had a duty to exercise reasonable care in the manufacture, sale, research, development, inspection, labeling, promoting, marketing, and/or distribution of Ortho Evra into the stream of commerce, including a duty to assure that this patch did not cause users to suffer from unreasonable, dangerous side effects.

50.    Defendants ORTHO-MCNEIL and MCKESSON failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control, marketing and/or distribution of Ortho Evra into interstate commerce, in that Defendants knew or should have known that using Ortho Evra created a high risk of unreasonable dangerous side effects, including but not limited to the risk of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems.

51.    Defendants ORTHO-MCNEIL and MCKESSON breached their duty to Plaintiffs and were negligent in the licensing, testing, design, manufacture, packaging, warning, advertising, promotion, distribution, and sale of Ortho Evra in that Defendants:

      A.    Failed to use ordinary care in designing and manufacturing the Ortho Evra so as to avoid the aforementioned risks to Plaintiffs;

      B.    Failed to accompany Ortho Evra with proper warnings regarding the possible adverse side effects associated with the use of the patch and the comparative severity and duration of such adverse effects, i.e., the warnings given did not accurately reflect the symptoms, scope or severity of the side effects;

      C.    Failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety and side effects of Ortho Evra;

      D.    Failed to provide adequate training to medical care providers for

9

COMPLAINT FOR DAMAGES

appropriate use of Ortho Evra;

    E.    Failed to warn Plaintiffs, either directly or indirectly, orally or in writing, about the following:

        (i)    The need for comprehensive, regular monitoring to ensure early discovery of potentially serious side effects like blood clots, deep vein thrombosis and pulmonary emboli;

        (ii)    The possibility of becoming injured, disabled or dying as a result of using Ortho Evra.

    F.    Failed to adequately test and/or warn about the serious side effects of Ortho Evra;

    G.    Failed to include adequate warnings with Ortho Evra that would alert Plaintiffs, physicians, hospitals, and clinics, to the potential risks and the nature, scope, severity, and duration of any serious side effects of Ortho Evra;

    H.    Continued to promote the efficacy and safety of Ortho Evra while providing little or no warnings, and downplaying any risks, even after Defendants knew of the risks of serious injury and/or death;

    I.    Delayed warnings of, and then failed to provide adequate warnings about the serious injuries, which may have dissuaded medical providers from prescribing Ortho Evra and deprived women of information so that they can weigh the true risks against the benefits of prescribing Ortho Evra; and

    J.    Were otherwise careless or negligent.

52.    Despite the fact that Defendants knew or should have known that Ortho Evra caused unreasonably dangerous side effects, Defendants continued and are currently continuing to market, manufacture, distribute and/or sell Ortho Evra to consumers, including Plaintiffs and their doctors.

53.    Defendants knew or should have known that consumers, such as Plaintiffs, would

10

1    suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

2    54.    Plaintiffs are entitled to punitive damages because the Defendants' failure to warn

3    was reckless and without regard for the public's safety and welfare. The Defendants misled both

4    the medical community and the public at large, including Plaintiffs, by making false

5    representations about the safety of Ortho Evra. The Defendants downplayed, understated, and

6    disregarded their knowledge of the serious side effects associated with the use of Ortho Evra

7    despite available information demonstrating that their products were likely to cause serious and

8    potentially fatal side effects to users like Plaintiffs.

9    55.    As a direct, proximate and legal result of the negligence, carelessness, other

10   wrongdoing and actions of the Defendants described herein, Plaintiffs were, and/or still are,

11   caused to suffer severe injuries including diminished enjoyment of life, strokes, pulmonary

12   emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent

13   health problems.

14   56.    Based upon information and belief, Defendants actually knew of Ortho Evra's

15   defective nature, as set forth herein, but continued, and still continue, to design, manufacture,

16   market and sell the patch so as to maximize sales and profits at the expense of the health and

17   safety of the public, including Plaintiffs, in conscious disregard of the foreseeable harm caused

18   by the patch.

19   57.    Defendants' conduct in the license, design, manufacturing, assembly, packaging,

20   warning, marketing, advertising, promotion, distribution and sale of Ortho Evra constituted

21   malice, oppression and fraud, including, but not limited to:

22   A.    Aggressively marketing and promoting Ortho Evra, knowing the high

23   risks posed by failing to conduct sufficient pre-clinical and clinical testing

24   and adequate post-marketing surveillance;

25   B.    Failing to include adequate warnings with Ortho Evra that would alert

26   consumers, physicians, hospitals, clinics, and other users to the potential

27   risks and the nature, scope, severity, and duration of any serious side

28   effects of the patch, particularly, strokes, pulmonary emboli, blood clots,

11

deep vein thrombosis, and heart attacks, as well as other severe permanent health problems;

C.   Continuing to promote the efficacy and safety of the patch, while providing little or no warnings, and downplaying any risks, even after Defendants knew of the increased risks associated with use of Ortho Evra as opposed to oral contraceptives;

D.   Delaying warnings of the dangerous side effects which may have dissuaded medical providers from prescribing Ortho Evra so freely, and depriving women of information so that they could weigh the true risks against the benefits of using the patch, was fraudulent, knowing misconduct, and/or conduct undertaken recklessly and with conscious disregard for the safety of consumers such as the Plaintiffs, such as to constitute despicable conduct, and oppression, fraud and malice, and such conduct was at all times relevant ratified by the corporate Defendants herein, thereby entitling Plaintiffs punitive damages in an amount appropriate to punish and set an example of Defendant.

58.   As a result of ORTHO-MCNEIL and MCKESSON's conduct, Plaintiffs suffered injuries and damages herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein below.

**SECOND CAUSE OF ACTION**
*Strict Product Liability - Failure to Warn*
(Against Defendants ORTHO-MCNEIL and MCKESSON)

59.   Plaintiffs incorporate by reference the allegations in all proceeding paragraphs of this Complaint as though fully set forth in this paragraph.

60.   Defendants ORTHO-MCNEIL and MCKESSON are the manufacturer and/or supplier of Ortho Evra.

61.   Ortho Evra manufactured and/or supplied by Defendants ORTHO-MCNEIL and MCKESSON was unaccompanied by proper warnings regarding all possible side effects

12

COMPLAINT FOR DAMAGES

associated with their use and the comparative severity, incidence, and duration of such adverse effects, i.e., the warnings given did not accurately reflect the signs, symptoms, incidence, scope or severity of the side effects.

62.     Defendants failed to perform adequate testing that would have shown that Ortho Evra possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made, both with respect to the use of the patch.

63.     Ortho Evra manufactured and/or supplied by Defendants was defective due to inadequate post-marketing surveillance and/or warnings or instructions because, after the manufacturer knew or should have known of the risks of injury from Ortho Evra, they failed to provide adequate warnings to users or consumers of the patch and continued, and still continue, to aggressively promote Ortho Evra.

64.     Ortho Evra manufactured and/or supplied by Defendants was defective because Defendants were aware that the amount of estrogen that is released from the patch is much higher than the levels associated with oral contraceptives.

65.     As a direct, proximate and legal result of the negligence, carelessness, other wrongdoing and actions of Defendants described herein, Plaintiffs have been injured as described above.

66.     Based upon information and belief, Defendants actually knew of the defective nature of Ortho Evra, as set forth herein, but continued, and still continue, to design manufacture, market and sell Ortho Evra so as to maximize sales and profits at the expense of the health and safety of the public including Plaintiffs, in conscious disregard of the foreseeable harm caused by Ortho Evra.

67.     Plaintiffs could not , by reasonable exercise of care, have discovered the defects and dangers of Ortho Evra.

68.     Defendants conduct in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution, and sale of Ortho Evra constituted malice, oppression and fraud, including, but not limited to:

13

**COMPLAINT FOR DAMAGES**

A.  Aggressively marketing and promoting Ortho Evra, knowing the high risks posed by failing to conduct sufficient pre-clinical and clinical testing and adequate post-marketing surveillance;

B.  Failing to provide complete literature with regards to Ortho Evra, and indicating the need for monitoring while on the patch;

C.  Failing to include adequate warnings with Ortho Evra that would alert consumers, physicians, hospitals, clinics and other users to the potential risks and the nature, scope, severity, and duration of any serious side effects of the drug, particularly the risk of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems;

D.  Continuing to promote the efficacy and safety of the drug, while providing little or no warnings, and downplaying any risks, even after Defendants knew of the increased risks associated with Ortho Evra use;

E.  Delaying warnings about the dangerous side effects which may have dissuaded medical providers from prescribing Ortho Evra so freely, and depriving women of information so that they could weigh the true risks against the benefits of using the patch, was fraudulent, knowing misconduct, and/or conduct undertaken recklessly and with conscious disregard for the safety of consumers such as the Plaintiffs, such as to constitute despicable conduct, fraud and malice, and such conduct was at all times relevant ratified by corporate Defendants herein, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish and set an example of Defendant.

69.  Defendants' actions, as described above, were performed willfully, intentionally, and with reckless disregard for the rights of Plaintiffs and the public.

70.  As a result of Defendants' conduct, Plaintiffs have sustained injuries described above.

14

71.    Accordingly, Plaintiffs seek and are entitled to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein below.

**THIRD CAUSE OF ACTION**
*Breach of Express Warranty*
(Against Defendants ORTHO-MCNEIL and MCKESSON)

72.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth in this paragraph.

73.    Defendants, ORTHO-MCNEIL and MCKESSON, through description, affirmation of fact, and promise relating to Ortho Evra, to the FDA, prescribing physicians, and the general public, including Plaintiffs, expressly warranted that Ortho Evra was safe and well accepted by users.

74.    Defendants, ORTHO-MCNEIL and MCKESSON further expressly warranted that Ortho Evra did not produce any side effects in excess of those risks associated with oral contraceptives, that the side effects were reflected accurately in the warnings, and that it was accurately tested and fit for its intended use.

75.    Ortho Evra does not conform to these express representations because it is not safe as its use produces serious adverse side effects including the risk of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems.

76.    As such, Defendants' product was neither in conformity to the promises, descriptions or affirmations of fact made about the patch nor adequately contained, packaged, labeled or fit for the ordinary purposes for which such goods are used.

77.    Defendants knew or should have known that, in fact, said representations and warranties were false and misleading in that Ortho Evra was not safe and/or fit for its intended use, and in fact resulted in serious injuries to the user.

78.    Plaintiffs relied on the express warranties of the Defendants herein. Members of the medical community, including physicians, and other healthcare professionals, relied upon the

15

**COMPLAINT FOR DAMAGES**

1  representations and warranties of the Defendants for use of Ortho Evra in prescribing,
2  recommending, and/or dispensing the product.

3       79.    Defendants thereafter breached their express warranties to Plaintiffs by: (i)
4  manufacturing, marketing, packaging, labeling, and selling Ortho Evra to Plaintiffs in such a way
5  that misstated the risks of injury, without warning or disclosure thereof by package and label of
6  such risks to Plaintiffs or their prescribing physicians or pharmacists, or without so modifying or
7  excluding such express warranties; (ii) manufacturing, marketing, packaging, labeling, and
8  selling Ortho Evra to Plaintiffs, which failed to prevent pregnancy in a safe manner and without
9  injury; and (iii) manufacturing, marketing, packaging, labeling, and selling Ortho Evra to
10  Plaintiffs, thereby causing injury to each.

11       80.    As a direct and proximate result of Defendants' conduct the Plaintiffs were and
12  still are caused to suffer severe injuries and physical pain including diminished enjoyment of
13  life, strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as
14  other severe permanent health problems.

15       81.    Plaintiffs are entitled to punitive damages because Defendants' failure to warn
16  was reckless and without regard to their welfare. Defendants misled both the medical community
17  and the public at large, including Plaintiffs, by making false representations about the safety of
18  their product. Defendants downplayed, understated, and disregarded their knowledge of the
19  serious side effects associated with the use of Ortho Evra, despite available information
20  demonstrating that it was likely to cause serious and sometimes fatal side effects to users.

21       WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set
22  forth herein below.

23

24                    **FOURTH CAUSE OF ACTION**
                       *Breach of Implied Warranty*
25         (Against Defendants ORTHO-MCNEIL and MCKESSON)

26       82.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs of
27  this Complaint as though fully set forth in this paragraph.

28       83.    At the time Defendants ORTHO-MCNEIL and MCKESSON marketed, sold, and

16

distributed Ortho Evra, for use by Plaintiffs, Defendants knew of the use for which Ortho Evra was intended and impliedly warranted the patch to be of merchantable quality and safe and fit for its intended use.

84.     Defendants ORTHO-MCNEIL and MCKESSON impliedly represented and warranted to Plaintiffs, healthcare professionals and the FDA that the Ortha Evra  it was supplying was safe and fit for ordinary use.

85.     Plaintiffs and members of the medical community relied on Defendants warranties that their product, Ortho Evra,  was of merchantable quality and safe and fit for its intended use.

86.     Contrary to such implied warranties, Ortho Evra was not of merchantable quality or safe or fit for its intended use, because it was unreasonably dangerous and unfit for the ordinary purposes for which it was used, as described above.

87.     Defendant's conduct in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution, and sale of Ortho Evra constituted malice, oppression and fraud, including but not limited to:

A.     Marketing and promoting the product aggressively, knowing the high risks posed by failing to conduct sufficient pre-clinical and clinical testing and adequate post-market surveillance;

B.     Failing to provide complete literature with regards to Ortho Evra and indicating the need for monitoring while on the patch;

C.     Failing to include adequate warnings with Ortho Evra that would alert consumers, physicians, hospitals, clinics and other users of the potential risks and the nature, scope, severity and duration of any serious side effects of the patch, particularly, the risks of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems;

D.     Continuing to promote the efficacy and safety of Ortho Evra, while providing little or no warnings, and downplaying any risks, even after the

17

1    Defendants knew of the increased risks associated with use of their
2    product;

3    E.    Delaying warnings of, and then failing to provide adequate warnings about
4         the dangerous side effects which may have dissuaded medical providers
5         from prescribing Ortho Evra so freely, and depriving women of
6         information so that they could weigh the true risks against the benefits of
7         prescribing the product, was fraudulent, knowing misconduct, and/or
8         conduct undertaken recklessly and with conscious disregard for the safety
9         of consumers like Plaintiffs, such as to constitute despicable conduct,
10        oppression, fraud and malice, and such conduct was at all times relevant
11        ratified by the corporate Defendants herein, thereby entitling Plaintiffs
12        punitive damages in an amount appropriate to punish and set an example
13        of the Defendants.

14   88.   As a direct, proximate and legal result of Defendants' negligence, carelessness
15   and other wrongdoing described herein, Plaintiffs have sustained severe injuries as described
16   above.

17   89.   Based upon information and belief, Defendants actually knew of Ortho Evra's
18   defective nature, as set forth herein, but continued to design, manufacture, market, and sell Ortho
19   Evra to maximize sales and profits at the expense of the health and safety of the public, including
20   Plaintiffs in conscious disregard of the foreseeable harm caused by the patch.

21        WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set
22   forth herein below.

23                              **FIFTH CAUSE OF ACTION**
                                *Negligent Misrepresentation*
24              (Against Defendants ORTHO-MCNEIL and MCKESSON)

25   90.   Plaintiffs incorporate by reference the allegations in all preceding paragraphs of
26   this Complaint as though fully set forth in this paragraph.

27   91.   Defendants ORTHO-MCNEIL and MCKESSON, having undertaken to prepare,
28   design, research, develop, manufacture, inspect, label, market, promote, and sell Ortho Evra,

18

owed a duty to Plaintiffs and the medical community to provide them accurate and complete information regarding this product.

92.     The Defendants' advertising program, by containing affirmative misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of Ortho Evra was safe, and had no unacceptable side effects.

93.     On information and belief, Plaintiffs aver that Defendants failed to disclose, misstated, downplayed, and understated the health hazards and risks associated with the use of Ortho Evra. Defendants deceived potential users and prescribers of the patch by relaying only allegedly positive information, while concealing, misstating and downplaying the known adverse and serious health effects.

94.     Defendants knew or were aware or should have known or been aware that Ortho Evra had been insufficiently tested and that it lacked necessary warnings. Defendants were or should have been in possession of evidence demonstrating that their product created a high risk of unreasonable, dangerous side effects, including but not limited to strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems. Nonetheless, Defendants continued to market Ortho Evra by providing false and misleading information with regard to its safety and efficacy.

95.     Plaintiffs and their doctors justifiably relied to their detriment upon Defendants' positive misrepresentations concerning Ortho Evra.

96.     As a result of Defendants' conduct, Plaintiffs have sustained injuries as described above. Accordingly, Plaintiffs seek and are entitled to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them , as set forth herein below.

**SIXTH CAUSE OF ACTION**
*Fraud*
(Against Defendants ORTHO-MCNEIL and MCKESSON)

97.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth in this paragraph.

19

98. ORTHO-MCNEIL and MCKESSON, having undertaken to prepare, design, research, develop, manufacture, inspect, label, market, promote and sell Ortho Evra, owed and continue to owe a duty to provide accurate and complete information regarding their product.

99. Defendant deceptively sought to create the image and impression that the use of Ortho Evra was just as safe as the oral contraceptives already on the market, and had no unacceptable side effects, by intentionally distributing false information to Plaintiffs, the general public, healthcare professionals and the FDA.

100. On information and belief, Plaintiffs aver that the Defendants intentionally concealed, misstated, downplayed, suppressed, and ignored test results that were unfavorable to the Defendants as well as the results that revealed that Ortho Evra was not safe in the prevention of pregnancy. Defendants deceived potential users and prescribers of the patch by disseminating only allegedly positive information while concealing, misstating and downplaying the known adverse and serious health effects. Defendants falsely and deceptively kept relevant information from potential Ortho Evra users and minimized safety concerns.

101. These representations were made with the purpose of deceiving and defrauding the public, the FDA and the Plaintiffs in order to gain their confidence and falsely ensure the quality and fitness of Ortho Evra.

102. In representations made to Plaintiffs, physicians and the public in general, Defendants' fraudulently concealed and intentionally omitted information included, but not limited to the following:

    A. That Ortho Evra was not as safe as other forms of contraception;

    B. That the amount of estrogen Ortho Evra users are exposed to is much higher than the levels that oral contraceptive users are exposed to;

    C. The risk of adverse effects is more likely with Ortho Evra use because of the higher levels of estrogen that the user is exposed to;

    D. That even after concerns about serious adverse effects were known, Ortho Evra was not adequately tested.

103. Defendants were or should have been in possession of evidence demonstrating

20

1  that their product caused serious side effects. Nevertheless, they continued to market Ortho Evra
2  and represent falsely in their documents that Ortho Evra was safe and did not present any health
3  risks above those associate with the oral contraceptives on the market.

4      104.    Defendants knew or should have known that the public, including the Plaintiffs
5  would rely on the information that was being distributed.

6      105.    Plaintiffs did in fact rely on and believe Defendants' representations to be true
7  and relied upon the representations, and were induced to purchase and use Ortho Evra. Plaintiffs
8  did not discover the true facts with respect to the dangerous and serious side effects or the false
9  representations that were made by Defendants, nor could the Plaintiffs have discovered the true
10  facts with reasonable diligence.

11      106.    Had the Plaintiffs known of the true facts with respect to the dangerous and
12  serious health risks of Ortho Evra, Plaintiffs would not have purchased or used Ortho Evra nor
13  would they have relied on Defendants' false representations.

14      107.    Defendants concealment and omissions of material facts concerning the safety of
15  Ortho Evra was made purposefully, wilfully, wantonly and/or recklessly, to mislead Plaintiffs,
16  and their physicians into continued use and/or dispensing of Ortho Evra.

17      108.    Plaintiffs are entitled to punitive damages because the failure of the Defendants to
18  warn was reckless and without regard for the public's safety and welfare. Defendants misled
19  both the medical community and the general public, including the Plaintiffs, through false
20  representations about the safety of Ortho Evra.

21      109.    The Defendants' actions, as described above, were performed willfully,
22  intentionally, and with reckless disregard for the rights of Plaintiffs and the public.

23      110.    Accordingly, Plaintiffs seek and are entitled to compensatory and punitive
24  damages in an amount to be determined at trial.

25      WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set
26  forth herein below.

27

28

21

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows for:

1.   Costs of suit incurred herein;

2.   Special damages according to proof;

3.   General damages according to proof;

4.   Punitive or exemplary damages according to proof;

5.   Prejudgment interest on these losses;

6.   For such other and further relief as the Court deems just.

DATED:  November 6, 2007                    KHORRAMI, POLLARD & ABIR, LLP

                                       By: _____
                                            SHAWN KHORRAMI, ESQ.
                                            Attorney for Plaintiff

22

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury in this action .

DATED: November 6, 2007                    KHORRAMI, POLLARD & ABIR, LLP

By: _____
      SHAWN KHORRAMI, ESQ.
      Attorney for Plaintiff

23

**COMPLAINT FOR DAMAGES**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

24

COMPLAINT FOR DAMAGES



1  CHARLES F. PREUSS (State Bar No. 45783)
2  BRENDA N. BUONAIUTO (State Bar No. 173919)
   DRINKER BIDDLE & REATH LLP
3  50 Fremont Street, 20th Floor
   San Francisco, California 94105
4  Telephone: (415) 591-7500
   Facsimile: (415) 591-7510

5  Attorneys for Defendants
6  ORTHO-MCNEIL PHARMACEUTICAL, INC.
   and MCKESSON CORPORATION

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11 THERESA ABEL, an individual; LISA          Case No.    C 06 7551
   ALEXANDER, an individual; LISA
12 ALEXANDER, an individual; NATALIE          DECLARATION OF GREG YONKO IN
   AMBROSE, an individual; NAOMI              SUPPORT OF NOTICE OF REMOVAL
13 ANDERSON, an individual; RONNIE            AND REMOVAL OF ACTION UNDER
   BANKS, an individual; JENNIFER             28 U.S.C. § 1441(b) [DIVERSITY]
14 BARNES, an individual; SHANANE
   BARROW, an individual; ANDREA
15 BREVARD, an individual; MONICA
   BROWN, an individual; ELIZABETH
16 BROXTERMAN, an individual; REGIN
   BRYANT, an individual; LAUREN
17 BUCHANON, an individual; LINDA
   CHAMPION, an individual; O'NESCIAN
18 CLINTON, an individual; RODRINA
   COLLIER, an individual; DENA COMER
19 an individual; LORI CROSS, an individual;
   KIMBERLY EARLES, an individual;
20 APRIL FIELDER, an individual; MARY
   FREY, an individual; SHERRIE GROVE,
21 an individual; HOLLY HALE, an
   individual; AUDDRETTA HARRISON, an
22 individual; TANESHA KING, an
   individual; VERONICA LIPSCOMB, an
23 individual; LYNNELL LUMPKINS, an
   individual; GABRIELA MENA, an
24 individual; EBONI MITCHELL, an
   individual; ROCHELLE MORRIS, an
25 individual; LATANGELA NEWSOME, an
   individual; DESHA NICKERSON, an
26 individual; SANDRA NORMAN, an
   individual; ISABELLA PARKER, an
27 individual; SUZETTE RAMIREZ, an
   individual; MONIQUE REED, an
28

1   individual; GENEVIEVE RENFRO, an
2   individual; JENNIFER ROUSE, an
    individual; ELIZABETH SMITH, an
3   individual; TJUANA STEWART-MARK,
    an individual; LATOSHA UNDERWOOD,
4   an individual; COSONDA WEAVER, an
    individual; SAMANTHA WINCHESTER,
5   an individual;

6                Plaintiffs,

7     v.

8   ORTHO-MCNEIL PHARMACEUTICAL,
    INC., a Delaware Corporation;
9   MCKESSON CORP. and DOES 1-500,
    inclusive,

10               Defendants.

11     I, GREG YONKO, declare:

12     1.     I am Senior Vice President - Purchasing for McKesson Corporation

13   ("McKesson"). I make this Declaration based on my personal knowledge and/or

14   information assembled by employees of McKesson, which I am informed and believe to

15   be true. I would and could competently testify to the matters stated in this Declaration if

16   called as a witness.

17     2.     McKesson was and is a Delaware corporation, with its principal place of

18   business in San Francisco, California.

19     3.     McKesson was served with the Summons and Complaint in this action on

20   November 15, 2006.

21     4.     McKesson consents to the removal of this action.

22     5.     McKesson had no involvement in the development or preparation of the

23   prescribing information for Ortho Evra® and did not have any responsibility for the

24   content of other written warnings concerning Ortho Evra®.

25     6.     At no time has McKesson had any involvement with the manufacture,

26   development, or testing of Ortho Evra®.

27     7.     At no time has McKesson had any involvement with the packaging,

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

1    labeling, advertising, promotion, or marketing of Ortho Evra®.

2         I declare under penalty of perjury under the laws of the United States of America that

3    the foregoing is true and correct. Executed on December __, 2006, in San Francisco,

4    California.

5

6         GREG YONKO

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Drinker Biddle & Reath LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

DECLARATION OF GREG YONKO IN SUPPORT OF NOTICE OF REMOVAL AND REMOVAL  CASE No.

FILED    ENTERED
LODGED    RECEIVED

**NOV 27 2002**

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE
(PPA) PRODUCTS LIABILITY
LITIGATION,

MDL NO. 1407

ORDER DENYING PLAINTIFF'S
MOTION TO REMAND

This document relates to:

Barnett, et al. v. American
Home Products Corp., et al.,
NO. C02-423R

THIS MATTER comes before the court on the motion of plain-
tiffs to remand the case to state court in Mississippi.  Having
reviewed the papers filed in support of and in opposition to this
motion, the court rules as follows:

                    I.  BACKGROUND

Plaintiffs purchased a variety of over-the-counter drugs
including, but not limited to, products sold under the trade
names "Robitussin," "Alka-Seltzer Plus," "Dimetapp," "Tavist D,"
"BC," "Triaminic," "Contac," "Comtrex," and "Equate Tussin CF."
All of these products contained the ingredient phenylpro-
panolamine ("PPA").  The individuals later consumed the medica-
tion and suffered unidentified types of injuries.  In June 2001,
plaintiffs filed an amended complaint in Mississippi state court
linking the PPA in the medicine with the injuries sustained.

ORDER
Page - 1 -

1   The complaint alleges numerous causes of action against both
2   manufacturers and distributors of PPA-containing products, as
3   well as several retail stores that sold those products.  One of
4   the stores named as a defendant, Bill's Dollar Stores, Inc.,
5   d/b/a Bill's Dollar Store ("Bill's Dollar Store"), is a Missis-
6   sippi corporation.  Two of the six total plaintiffs purchased
7   PPA-containing products from Bill's Dollar Store.[1]
8       Defendants removed the complaint to federal court alleging
9   that plaintiffs fraudulently joined Bill's Dollar Store.  Plain-
10  tiffs moved to remand to state court.  The case was later trans-
11  ferred to this court as part of a multi-district litigation
12  ("MDL").
13                    II.  ANALYSIS
14      A plaintiff cannot defeat federal jurisdiction by fraudu-
15  lently joining a non-diverse party.  As an MDL court sitting in
16  the Ninth Circuit, this court applies the Ninth Circuit's fraudu-
17  lent joinder standard to the motion to remand.  See, e.g., In re
18  Diet Drugs Prods. Liab. Litig., 220 F. Supp. 2d 414, 423 (E.D.
19  Pa. 2002); In re Bridgestone/Firestone, 204 F. Supp. 2d 1149,
20  1152 n.2 (S.D. Ind. 2002); In re Tobacco/Gov'tal Health Care
21  Costs Litig., 100 F. Supp. 2d 31, 34 n.1 (D. D.C. 2000); In re

---

23  [1] Defendants assert the misjoinder of these plaintiffs'
    claims and request that the court sever and deny remand as to the
24  four plaintiffs who did not purchase any products from Bill's
    Dollar Store, or from any other Mississippi store.  However,
25  because, as discussed below, the court denies remand as to all
    plaintiffs named in this action, the court need not address the
26  question of misjoinder at this time.

ORDER
Page - 2 -

1  *Ford Motor Co. Bronco II Prods. Liab. Litig.*, MDL-991, 1996 U.S.
2  Dist. LEXIS 6769, at *2-4 (E.D. La. May 16, 1996).[2] Under this
3  standard, joinder of a non-diverse party is deemed fraudulent
4  "'[i]f the plaintiff fails to state a cause of action against a
5  resident defendant, and the failure is obvious according to the
6  settled rules of the state.'" *Morris v. Princess Cruises, Inc.*,
7  236 F.3d 1061, 1067 (9th Cir. 2001) (quoting *McCabe v. General
8  Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).[3]

9      The propriety of removal to federal court is determined from
10  the allegations in the complaint at the time of removal.  *See
11  Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)
12  However, in the case of fraudulent joinder, the defendant "'is
13  entitled to present the facts showing the joinder to be fraudu-
14  lent.'"  *Id.* (quoting *McCabe*, 811 F.2d at 1339).  *See also Morris*

---

16  [2] *See generally Menowitz v. Brown*, 991 F.2d 36, 40-41 (2d
17  Cir. 1993); *In Re Korean Airlines Disaster*, 829 F.2d 1171, 1174-
    76 (D.C. Cir. 1987).

18  [3] However, as a practical matter, application of the Fifth
19  Circuit's fraudulent joinder standard would not alter the court's
    conclusion.  *See Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393
20  (5th Cir. 2000) (remand is denied where there is "no reasonable
    basis for predicting that plaintiffs might establish liability .
21  . . against the in-state defendants.")  For example, recent MDL
    courts utilized fraudulent joinder standards similar, and in one
22  case identical, to the Fifth Circuit's standard in deeming
    Mississippi pharmacies and their employees fraudulently joined
23  for reasons similar to those expressed in this opinion.  *See In
    re Diet Drugs Prods. Liab. Litig.*, 220 F. Supp. 2d at 423-24
24  (noting that there had been "a pattern of pharmacies being named
    in complaints, but never pursued to judgment, typically being
25  voluntarily dismissed at some point after the defendants' ability
    to remove the case has expired"); *In re Rezulin Prods. Liab.
26  Litig.*, 133 F. Supp. 2d 272, 279 & n.3, 288-92 (S.D.N.Y. 2001).

ORDER
Page - 3 -

1    235 F.3d at 1067-68 (citing Cavallini v. State Farm Mut. Auto.

2    Ins. Co., 44 F.3d 256, 263 (5th Cir. 1995) for the proposition

3    that the court may "'pierc[e] the pleadings'" and consider

4    "summary judgment-type evidence.")

5       Defendants allege that plaintiffs fraudulently joined Bill's

6    Dollar Store, while plaintiffs claim the existence of legitimate

7    causes of action against Bill's Dollar Store, including products

8    liability, negligence, misrepresentation, and implied warranty

9    claims. The parties also argue as to the relevance of a bank-

10   ruptcy petition filed by Bill's Dollar Store prior to the filing

11   of this suit.

12   A.    Products Liability

13       The complaint contains failure to warn and design defect

14   allegations pursuant to the Mississippi Products Liability Act.

15   Miss. Code Ann. § 11-1-63. Under the Products Liability Act,

16   plaintiff must show that at the time the product left the control

17   of the manufacturer or seller, it was defective in failing to

18   contain adequate warnings or instructions, and/or was designed in

19   a defective manner. Miss. Code Ann. § 11-1-63 (a)(i)(2)-(3).

20   Plaintiff must also show that the manufacturers and sellers knew,

21   or in light of reasonably available knowledge or the exercise of

22   reasonable care should have known, about the danger that caused

23   the alleged damage. Miss. Code Ann. § 11-1-63 (c)(i), (f)(i).[1]

24

25       [1] See also Huff v. Shopsmith, Inc., 786 So.2d 383, 387 (Miss. 2001) ("With the adoption of 11-1-63, common law strict liability, as laid out in State Stove Mfg. Co. v. Hodges, 189 So.2d 113

26

ORDER
Page - 4 -

1  Plaintiffs allege in the complaint that "defendants" or "all
2  defendants" knew or should have known of dangers associated with
3  PPA. Moreover, plaintiffs specifically aver this knowledge or
4  reason to know on the part of the retailer defendants, including
5  Bill's Dollar Store. However, the court finds that no factual
6  basis can be drawn from the complaint that Bill's Dollar Store
7  had knowledge or reason to know of any dangers allegedly associ-
8  ated with PPA.
9       First, the complaint utilizes the plural "defendants" in a
10  number of allegations that one could not reasonably interpret to
11  include Bill's Dollar Store. See, e.g., Louis v. Wyeth-Ayerst
12  Pharm., Inc., No. 5:00CV102LN, slip op. at 5-9 (S.D. Miss. Sup.
13  25, 2000) (finding products liability allegations lodged against
14  "defendants" conclusory where there was no factual support for
15  conclusion that Mississippi pharmacies had knowledge or reason to
16  know of alleged dangers associated with various diet drugs).[6]
17  ─────────────────
18  (Miss. 1956), is no longer the authority on the necessary
    elements of a products liability action."]
19
20  [6]See also In re Diet Drugs Prods. Liab. Litig., 220 F. Supp.
    2d at 424 (finding complaints, including failure to warn,
21  negligence, breach of warranty, and strict liability claims,
    devoid of specific allegations against Mississippi pharmacies and
22  "filled instead with general statements levied against all
    defendants, which most properly can be read as stating claims
23  against drug manufacturers."]; In re Rezulin Products Liab.
    Litig., 133 F. Supp. 2d at 291 (finding improper joinder in case
24  where Mississippi pharmacies were lumped in with manufacturers
    and acts alleged, including failure to warn, breach of warranty,
25  and fraud, were attributed to "'defendants' generally", but
    never connected to the pharmacies); accord Badon, 224 F.3d at
26  391-93 ["While the amended complaint does often use the word

ORDER
Page - 5 -

1  For example, the complaint describes "defendants" as members of

2  the Non-Prescription Drug Manufacturers Association ("NDMA").

3  Through this association, "defendants" purportedly participated

4  in numerous discussions relating to the safety of PPA over the

5  past two decades, had representatives sit on the NDMA PPA Task

6  Force, and funded relevant studies.  In other words, plaintiffs,

7  in significant part, demonstrate "defendants'" knowledge as to

8  risks allegedly posed by PPA through activities engaged in by

9  manufacturer defendants alone.

10      Indeed, while "defendants" are alleged to have been aware of

11  to have had responsibility for awareness of numerous scientific

12  journal articles, incident reports, medical textbooks, and other

13  reports containing information as to risks of PPA consumption,

14  general medical practitioners are excluded from this awareness

15  and described as being not "fully informed."  The complaint

16  supplies no factual support for a conclusion that a dollar store

17  possessed medical and scientific knowledge beyond that possessed

18  by medical practitioners.

19      Second, the complaint specifically lays the responsibility

20  for allegedly concealing dangers posed by PPA on the manufacturer

21  defendants.  For example, the complaint alleges that the manufac-

22  turer defendants concealed material facts regarding PPA through

23  product packaging, labeling, advertising, promotional campaigns

24

25  'defendants,' frequently it is evident that such usage could not
   be referring to the 'Tobacco Wholesalers.'"; finding conspiracy

26  allegations against Louisiana defendants entirely general].

ORDER
Page ~ 6 ~

1  and materials, and other methods. This allegation directly
2  undermines and contradicts the idea that Bill's Dollar Store had
3  knowledge or reason to know of alleged defects. See, e.g.,
4  Louis, slip op. at 4-5 (finding complaint's "major theme" to
5  consist of the "manufacturers' intentional concealment of the
6  true risks of the drug(s), coupled with dissemination through
7  various media of false and misleading information of the safety
8  of the drug(s) at issue, [which belied] any suggestion of knowl-
9  edge, or reason to know by [the] resident defendants."); Cf. In re
10 Rezulin Products Liab. Litig., 133 F. Supp. 2d 272, 290 (S.D.N.Y.
11 2001) (finding Mississippi pharmacies facing failure to warn
12 claims fraudulently joined where "the theory underlying the
13 complaints [was] that the manufacturer defendants hid the dangers
14 of Rezulin from plaintiffs, the public, physicians, distributors
15 and pharmacists -- indeed from everyone.")
16     In sum, the court concludes that one could not reasonably
17 read the complaint to support the idea that the retailer defen-
18 dants had knowledge or reason to know of any dangers allegedly
19 associated with PPA. Indeed, reading the complaint as a whole,
20 this allegation reveals itself as directed towards the manufac-
21 turer defendants alone. As such, the court finds that plaintiffs
22 fail to state a products liability cause of action against Bill's
23 Dollar Store.[*]

24

25     [*] The complaint once alludes to an "alternative" breach of
    express warranty claim under the Products Liability Act. See
26 Miss. Code Ann. § 11-1-63 (a)(1)(4) (requiring a showing that the

ORDER
Page - 7 -

B. **Negligence and Misrepresentation**

The complaint alleges negligence and misrepresentation by Bill's Dollar Store. A negligence cause of action also requires a showing of knowledge or reason to know on the part of the seller. See, e.g., R. Clinton Constr. Co. v. Bryant & Reaves, Inc., 442 F. Supp. 838, 851 (N.D. Miss. 1977) ("The rule is well settled that in order to fasten liability upon a party for negligence, it must be shown by a preponderance of the evidence that he knew or through the exercise of reasonable care should have known that his selection of a [product] would cause damage to his customer.")[1] A misrepresentation cause of action requires

_____

seller breached an express warranty or failed to conform to other express factual representations upon which the claimant relied). However, the products liability allegations go on to Louch solely upon failure to warn and design defect claims. Because the complaint lacks any factual basis for support of a breach of express warranty claim against Bill's Dollar Store, the court also finds this bare allegation insufficient to support remand.

[1] Accord Louis, slip op. at 3-4 & n.3 ("[K]nowledge, or a reason to know, is also a necessary requisite for any claim of failure to warn or negligence that a plaintiff might undertake to assert extraneous to a claim under the Products Liability Act itself (assuming solely for the sake of argument that such a claim could exist).")/ Cadillac Corp. v. Moore, 320 So.2d 361, 365 (Miss. 1975) (discussing negligence in "vendor/purchaser" context and stating that "fault on the part of a defendant so as to render him liable is to be found in action or nonaction, accompanied by knowledge, actual or implied, of the probable result of his conduct.") Cf. Moore v. Memorial Hosp. of Gulfport, 825 So.2d 658, 664-66 (Miss. 2002) (extending "learned intermediary" doctrine to pharmacists in case involving prescription drug, and holding no actionable negligence claim could exist against a pharmacy unless a plaintiff indisputably informed the pharmacy of health problems which contraindicated the use of the drug in question, or the pharmacist filled

ORDER
Page - 8 -

1  a plaintiff to show:

2      (1) a representation; (2) its falsity; (3) its materi-
3      ality; (4) the speaker's knowledge of its falsity or
       ignorance of its truth; (5) the speaker's intent that
4      the representation should be acted upon by the hearer
       and in the manner reasonably contemplated; (6) the
5      hearer's ignorance of its falsity; (7) the hearer's
       reliance on its truth; (8) the hearer's right to rely
6      thereon; and (9) the hearer's consequent and proximate
       injury.

7  Johnson v. Parke-Davis, 114 F. Supp. 2d 522, 525 (S.D. Miss.

8  2000) (citing Allen v. Mac Tools, Inc., 671 So.2d 636, 642 (Miss.

9  1996)).

10     Again, the court finds that the general and contradictory

11 allegations in the complaint do not support the existence of any

12 knowledge or reason to know on the part of Bill's Dollar Store to

13 support a negligence cause of action.  The court finds the

14 complaint similarly bereft of any factual support for the idea

15 that Bill's Dollar Store made any misrepresentations whatsoever

16 to plaintiffs regarding the PPA-containing products.  See, e.g.,

17 Johnson, 114 F. Supp. 2d at 525 ("Suffice it to say that Plain-

18 tiffs have no proof . . . that any of the named [Mississippi]

19 representatives made any representations directly to any of the

20 plaintiffs.  Thus, none of the Plaintiffs was the 'hearer' of any

21 of the sales representatives' alleged misrepresentations.";

22 finding plaintiffs had no cause of action for misrepresentation).

23 Instead, as discussed above, the complaint attributes this

24

25 ──────────────
   prescriptions in quantities inconsistent with the recommended
26 dosage guidelines).

   ORDER
   Page - 9 -

1  behavior to the manufacturing defendants alone.  As such, the

2  court also finds that plaintiffs fail to state negligence and

3  misrepresentation causes of action against Bill's Dollar Store.

4  C.   Implied Warranty

5       The complaint also alleges that Bill's Dollar Store breached

6  implied warranties of merchantability and fitness for particular

7  purpose.  See Miss. Code Ann. §§ 75-2-314, 315.  The complaint

8  accuses "defendants" of breaching the implied warranty of mer-

9  chantability in failing to adequately label containers and

10  packages containing PPA, and because the products sold failed to

11  conform to promises or affirmations of facts made on the contain-

12  ers or labels.  See Miss. Code Ann. § 75-2-314 (2)(e)-(f).  The

13  complaint accuses both manufacturers and sellers of breaching the

14  implied warranty of fitness for particular purpose where they had

15  reason to know of the particular use of the products, and the

16  purchasers relied on the sellers' skill or judgment in selecting

17  and furnishing suitable and safe products.  See Miss. Code Ann. §

18  75-2-315.

19       In order to recover for breach of implied warranty, a buyer

20  "must within a reasonable time after he discovers or should have

21  discovered any breach notify the seller of breach or be barred

22  from any remedy."  Miss. Code Ann. § 75-2-607 (3)(a); accord C.R.

23  Daniels, Inc. v. Yazoo Mfg. Co., 641 F. Supp. 205, 210-11 (S.D.

24  Miss. 1986); Gast v. Rogers-Dingus Chevrolet, 585 So. 2d 725,

25  730-31 (Miss. 1991).  Here, the complaint contains no indication

26  that plaintiffs provided Bill's Dollar Store with any notice as

ORDER
Page - 10 -

1  to an alleged breach of warranty prior to the institution of this
2  lawsuit.

3       Additionally, with respect to the merchantability claim, the
4  complaint contains no factual support for a conclusion that
5  Bill's Dollar Store was in any way involved with the labeling
6  and/or packaging of the products at issue.  Instead, the com-
7  plaint alleges that the manufacturer defendants concealed mate-
8  rial facts regarding PPA through product packaging and labeling.

9       The court likewise finds plaintiffs' fitness for particular
10 purpose allegation insufficient.  "Mississippi does not recognize
11 an implied warranty of fitness for a particular purpose when the
12 good is purchased for the ordinary purpose of a good of that
13 kind."  Farris v. Coleman Co., 121 F. Supp. 2d 1014, 1016 (N.D.
14 Miss. 2000) (fitness for particular purpose claim failed where
15 plaintiff purchased cooler to keep food and beverages cold - the
16 ordinary purpose for which a cooler is used).  Here, plaintiffs
17 attested that they purchased PPA-containing products to remedy
18 their "cold, flu, sinus and/or allergy symptoms" - the ordinary
19 purpose of these medications.

20      Therefore, for the reasons stated above, the court finds
21 that plaintiffs fail to state implied warranty causes of action
22 against Bill's Dollar Store.

23 D.  Bankruptcy

24      Bill's Dollar Store filed a bankruptcy petition in February
25 2001, several months prior to the filing of plaintiffs' com-
26 plaint.  The filing of the bankruptcy petition operates as a stay

ORDER
Page - 11 -

1  on judicial or other proceedings brought against Bill's Dollar
2  Store that were or could have commenced prior to the commencement
3  of the bankruptcy proceeding. See 11 U.S.C. § 362(a); In re
4  Cajun Elec. Power Co-Op, Inc., 185 F.3d 446, 457 (5th Cir. 1999).
5      Plaintiffs argue that the automatic stay poses no barrier to
6  relief given that they were unaware of the bankruptcy petition at
7  the time they filed their complaint, and because they anticipate
8  that the Bankruptcy Court will agree to their pending request to
9  lift the stay.  However, whether or not plaintiffs knew of the
10 petition and whether or not the stay may later be lifted, the
11 fact remains that, at the time plaintiffs filed their complaint,
12 the stay operated to prohibit their lawsuit.  As noted above, the
13 court determines jurisdiction based on the claims as stated at
14 the time of removal.  As such, the court finds the existence of
15 the stay at the time of filing serves as an additional reason to
16 deny remand of this matter to state court.  Cf. Ritchey, 139 F.3d
17 at 1319-20 (denying remand where the statute of limitations had
18 expired at the time plaintiff filed the complaint)."
19                    III.  CONCLUSION
20     The court concludes that plaintiffs fail to state a cause of
21 action against the only non-diverse defendant, and that the
22
23    "Unlike in a number of other cases transferred to this MDL,
   the defendants here did not supply the court with any summary
24 judgment-type evidence to establish the retailer defendant's
   fraudulent joinder.  However, the court nonetheless finds that a
25 plain reading of the complaint does not allow a conclusion that
   plaintiffs state a cause of action against Bill's Dollar Store.
26

ORDER
Page - 12 -

1  failure is obvious according to the settled rules of Mississippi.

2  As such, the court finds Bill's Dollar Store fraudulently joined

3  and DENIES plaintiff's motion to remand the case to the state

4  courts of Mississippi.

5      DATED at Seattle, Washington this 26th day of November,

6  2002.

7

8                              BARBARA JACOBS ROTHSTEIN
                               UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
Page - 13 -

23. APR 26 2003

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

In re REZULIN LITIGATION

CASE NO. CV 03-1647-R(RZx)

JACKIE BARLOW; CARMA DEKOVEN;
ERNESTINE DELAFONT, ZOE EGGER-
MUKARVTZ; and SAMUEL
GODBOULDT,

Plaintiffs,

v.

WARNER-LAMBERT CO.; PFIZER INC.;
JERROLD OLEFSKY; McKESSON CORP.,
et al.

Defendants.

[PROPOSED] ORDER
DENYING PLAINTIFFS'
MOTION FOR REMAND

KAYE SCHOLER LLP

Defendants removed this action from state court to this Court alleging diversity jurisdiction. Defendants asserted that Jerrold Olefsky and McKesson Corp., both of whom are California residents, were fraudulently joined. Plaintiffs moved to remand to state court. The motions came on for hearing by the Court on April 21, 2003.

Having considered the motions and other documents in support of and in opposition to the motions, having heard the arguments of counsel, and being fully advised in the matter, the Court denies the motion.

The Court finds that Dr. Jerrold Olefsky ("Dr. Olefsky"), a patent-holder and clinical investigator, owed no legal duty to any of the plaintiffs, and, therefore, there is no possibility that the plaintiffs can prove a cause of action against Dr. Olefsky. Thus, Dr. Olefsky must be disregarded for purposes of determining federal diversity

1

83104762.WPD                                    [PROPOSED] ORDER

1   jurisdiction.

2       The Court further finds that there is no possibility that plaintiffs could prove a

3   cause of action against McKesson, an entity which distributed this FDA-approved

4   medication to pharmacists in California. Pursuant to comment k of the Restatement

5   (Second) of Torts Section 402A and California law following comment k, a

6   distributor of a prescription drug is not subject to strict liability.

7       Accordingly, this Court has diversity jurisdiction over each of these actions.

8   The motion to remand is denied.

9       IT IS SO ORDERED.

10  Dated: April 28, 2003

11                              MANUEL L. REAL

12                              MANUEL L. REAL
                                UNITED STATES DISTRICT JUDGE

13

14  Submitted by:

15  O'DONNELL & SHAEFFER LLP
    633 West Fifth Street, Suite 1700
16  Los Angeles, California 90071
    Telephone: (213) 532-2000
17  Facsimile: (213) 532-2020

18  KAYE SCHOLER LLP
    1999 Avenue of the Stars
19  Los Angeles, California 90067
    Telephone: (310) 788-1000
20  Facsimile: (310) 788-1200

21  By: _____
        Robert Barnes
22  Attorneys for Defendants
    WARNER-LAMBERT COMPANY and PFIZER INC.

23

24

25

26

27

28

KAYE SCHOLER LLP

53104763.WPD                    [PROPOSED] ORDER

2



KAYE SCHOLER LLP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In re REZULIN LITIGATION | CASE NO. CV 03-1643-R(RZx) |
| DIANE SKINNER; and DIANE YBARRA, | [PROPOSED] ORDER DENYING PLAINTIFFS' MOTION FOR REMAND |
| Plaintiffs, | |
| v. | |
| WARNER-LAMBERT CO.; PFIZER INC.; JERROLD OLEFSKY; McKESSON CORP., et al. | |
| Defendants. | |

Defendants removed this action from state court to this Court alleging diversity jurisdiction. Defendants asserted that Jerrold Olefsky and McKesson Corp., both of whom are California residents, were fraudulently joined. Plaintiffs moved to remand to state court. The motions came on for hearing by the Court on April 21, 2003.

Having considered the motions and other documents in support of and in opposition to the motions, having heard the arguments of counsel, and being fully advised in the matter, the Court denies the motion.

The Court finds that Dr. Jerrold Olefsky ("Dr. Olefsky"), a patent-holder and clinical investigator, owed no legal duty to any of the plaintiffs, and, therefore, there is no possibility that the plaintiffs can prove a cause of action against Dr. Olefsky. Thus, Dr. Olefsky must be disregarded for purposes of determining federal diversity jurisdiction.

1

23164767.WPD                                    [PROPOSED] ORDER

1      The Court further finds that there is no possibility that plaintiffs could prove a

2  cause of action against McKesson, an entity which distributed this FDA-approved

3  medication to pharmacists in California. Pursuant to comment k of the Restatement

4  (Second) of Torts Section 402A and California law following comment k, a

5  distributor of a prescription drug is not subject to strict liability.

6      Accordingly, this Court has diversity jurisdiction over each of these actions.

7  The motion to remand is denied.

8      IT IS SO ORDERED.

9  Dated: April 2?, 2003

10

11                              MANUEL L. REAL

                                             —————————————

12                              MANUEL L. REAL

13  Submitted by:              UNITED STATES DISTRICT JUDGE

14  O'DONNELL & SHAEFFER LLP
    633 West Fifth Street, Suite 1700

15  Los Angeles, California 90071
    Telephone:  (213) 532-2000

16  Facsimile:  (213) 532-2020

17  KAYE SCHOLER LLP
    1999 Avenue of the Stars

18  Los Angeles, California 90067
    Telephone:  (310) 788-1000

19  Facsimile:  (310) 788-1200

20  By: _____
      Robert Barnes

21  Attorneys for Defendants
    WARNER-LAMBERT COMPANY and PFIZER INC.

22

23

24

25

26

27

28

KAYE SCHOLER LLP